IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT AT ANCHORAGE

EMMA NASH, as Personal )
Representative of the )
ESTATE OF ELIZABETH NASH,)
)
      Plaintiff, )
)
vs. )
)
RYAN R. GERRY, MD, )
SHANNON PATRICK GARITTY, )
MD, KATHRYN A. LEWIS, RN,)
KIM DERR-OBERLIES, RN and)
JENNIFER M. VADEN, CNA )
)
      Defendants. )
_____) Case No. 3AN-16-*9482C* CI

## COMPLAINT

COMES plaintiff, through counsel, the law office of Dillon & Findley, P.C., and for its respective causes of action, alleges as follows:

1. Plaintiff Emma Nash, the personal representative of the Estate of Elizabeth Nash, brings this action on behalf of the Estate of Elizabeth Nash. Elizabeth Nash was during all relevant times herein, a resident of Point Hope, Alaska.

2. Defendant Ryan R. Gerry, M.D. is a medical doctor who is licensed by the State of Alaska and has been, during all relevant times alleged herein, a resident of Anchorage, Alaska.

LAW OFFICES
**DILLON & FINDLEY**
A PROFESSIONAL CORPORATION
1049 W. 5th Ave., Suite 200
Anchorage, Alaska 99501
Tel: (907) 277-5400 • Fax: (907) 277-9896

3. Defendant Shannon Patrick Garitty, M.D. is a medical doctor who is in residency according to licensing by the State of Alaska and has been, during all relevant times alleged herein, a resident of Anchorage, Alaska.

4. Defendant Kathryn A. Lewis, R.N. is a registered nurse who is licensed by the State of Alaska and has been, during all relevant times alleged herein, a resident of Anchorage, Alaska.

5. Defendant Kim Derr-Oberlies, R.N. is a registered nurse who is licensed by the State of Alaska and has been, during all relevant times alleged herein, a resident of Anchorage, Alaska.

6. Defendant Jennifer M. Vaden, C.N.A. is a certified nurse aide who is licensed by the State of Alaska and has been, during all relevant times alleged herein, a resident of Anchorage, Alaska.

7. Jurisdiction in this Court is proper under AS 22.10.020. Venue is proper under AS 22.10.030 and Alaska Rule of Civil Procedure 3.[1]

---

[1] This case involves care received at the Alaska Native Medical Center. It is likely that some if not all of the providers named were federal employees at the time of the care rendered to Ms. Nash and their care is governed by the Federal Torts Claims Act ("FTCA"). A proper administrative Form 95 has been filed to toll the statute of limitations for the federal action. However, federal case law does not protect the state statute of limitations for any healthcare provider who is not an

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Ave., Suite 200
Anchorage, Alaska 99501
Tel: (907) 277-5400 • Fax: (907) 277-9896

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5ᵗʰ Ave., Suite 200
Anchorage, Alaska 99501
Tel: (907) 277-5400 • Fax: (907) 277-9896

## FACTUAL BACKGROUND

8.   On October 17, 2014, Elizabeth Nash was t-boned by a midsized SUV that ran a stop sign while riding in a taxi with her daughter and grandson.   The cab was significantly damaged. All three were transported to Alaska Native Medical Center by ambulance; Ms. Nash arrived at about 8:08 p.m.

9.   The triage record described the motor vehicle crash as major.

10.   Portable chest and pelvis x-rays taken at about 8:35 p.m. revealed rib fractures on the right said with a right side apical pneumothorax, and right radius fracture of her arm. Ms. Nash was given an intravenous morphine drip for her pain.

11.   After arrival a series of tests were ordered for Ms. Nash, including CT of her head, spine, abdomen and pelvis, but then cancelled.   These tests were never performed.

12.   Ms. Nash had significantly elevated blood pressures during her ambulance transport.   Her initial blood pressure at the Alaska Native Medical Center ("ANMC") was hypotensive at 95/64.   After that her blood pressures were consistently

---

employee of the federal government under the FTCA.   Since there is no way to ensure that the healthcare providers who provided care to Ms. Nash were federal employees before the expiration of the state statute of limitations, this Complaint is necessary to require the United States Government to certify the status of each provider involved in her care.

COMPLAINT
*Emma Nash, et al. v. Ryan R. Gerry, M.D., et al.*
Case No. 3AN-16-_____ CI
Page 3 of 9

LAW OFFICES
**DILLON & FINDLEY**
A PROFESSIONAL CORPORATION
1049 W. 5th Ave., Suite 200
Anchorage, Alaska 99501
Tel: (907) 277-5400 • Fax: (907) 277-9896

hypertensive. Including pressures like 172/112. Ms. Nash had a respiratory rate of 20 and she was experiencing intermittent tachycardia.

13. Ms. Nash was examined by a resident, Dr. Shannon Patrick Garitty, and Dr. Ryan Gerry. Dr. Garitty and Dr. Ryan's dictated note acknowledge the fractures detected by the plain film x-rays, and determined there was no respiratory compromise. There was a decision to admit for observation. That note was dictated at 9:48 p.m., with vitals taken at 8:43 p.m.

14. Ms. Nash remained in the emergency room. She was periodically checked by nurses. Ms. Nash's vital signs remained concerning. At 9:42 p.m., Ms. Nash developed a fever and was given acetaminophen. At 11:00 p.m., Ms. Nash was tachycardic with a heart rate of 104, an elevated respiratory rate of 24, and a BP of 163/96. At midnight, she was noted to have a cough with secretions and she remained on oxygen with 6 to 2 liters of oxygen during this time. Her vitals were next checked at 1:00 a.m. when Ms. Nash remained tachycardic, her respiratory rate worsened from 24 to 28, her blood pressure worsened to 168/110. The last recorded vital signs were taken at 1:00 a.m. Ms. Nash was also experiencing nausea. Ms. Nash was also receiving I.V. fluids.

COMPLAINT
*Emma Nash, et al. v. Ryan R. Gerry, M.D., et al.*
Case No. 3AN-16-_____ CI
Page 4 of 8

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Ave., Suite 200
Anchorage, Alaska 99501
Tel: (907) 277-5400 • Fax: (907) 277-9896

15. At some point around 2:00 a.m. the resident, Dr. Garitty, provided more orders, including a CBC and chemical blood work panel, and anti-nausea medication. There is no documentation supporting why Dr. Garitty made these new orders. There is no documentation that Dr. Garitty evaluated Ms. Nash before amending the order. There is no documentation that the nurses communicated with Dr. Garitty at this time.

16. Ms. Nash's blood work came back at 2:11 a.m. and showed a marked increase in her white blood cell count from results received after she arrived earlier in the evening. There were also other concerning and worsening results from her previous panel.

17. At 3:15 a.m., nurse Kim E. Derr-Oberlies approached Ms. Nash and found her unresponsive.

18. A code was called and resuscitation was attempted for 16 minutes. Ms. Nash remained asystole the entire time. She was pronounced dead at 3:31 a.m.

19. There are two nursing notes entered by Ms. Derr-Oberlies relating to Ms. Nash. Both were entered after Ms. Nash's death, one at 5:10 a.m. and an amendment at 5:42 a.m. In those notes, Ms. Derr-Oberlies documents events that were not documented before Ms. Nash's death. Ms. Derr-Oberlies documents that Ms. Nash vomited "@300," which appears to be a typo, and

COMPLAINT
*Emma Nash, et al. v. Ryan R. Gerry, M.D., et al.*
Case No. 3AN-16-_____ CI

she documents providing anti-nausea medication at 2:18 a.m. Ms. Derr-Oberlies documents calling Dr. Garitty at 2:30 a.m. "to inform him of the patient's high blood pressure of 168/110 and 168/111 to which he ordered a one time dose of Metoprolol [sic] 5 mg IVP, once Pharmacy had cleared the medicaiton [sic], I approached the patient at 0315 and found her unresponsive . . . ."

20. Ms. Derr-Oberlies also documents that a different nurse, Karl Wade, went into his patient's room at 3:54 a.m. to give them medication and heard Ms. Nash cough.

21. Ms. Nash was unresponsive from 3:15 a.m. until she was pronounced dead at 3:31 a.m.

22. Thirty-two minutes later, Ms. Derr-Oberlies amended this entry to say Mr. Wade was in his patient's room and heard Ms. Nash cough at 2:54 a.m.

23. An autopsy revealed that Ms. Nash had an aortic dissection that caused a cardiac tamponade which is a consequence of the blunt trauma she experienced in the motor vehicle crash.

<u>COUNT I</u>

Plaintiff re-alleges paragraphs 1 through 23 as if fully set forth herein, and further alleges as follows:

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Ave., Suite 200
Anchorage, Alaska 99501
Tel: (907) 277-5400 • Fax: (907) 277-9896

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5ᵗʰ Ave., Suite 200
Anchorage, Alaska 99501
Tel: (907) 277-5400 • Fax: (907) 277-9896

24. Defendant Ryan R. Gerry, M.D. owed a duty to plaintiff Elizabeth Nash to assess, diagnose and treat her after a major motor vehicle accident with the degree of care and/or knowledge or skill possessed by or ordinarily exercised by medical doctors trained or experienced in the field of emergency medicine.

25. Defendant Dr. Gerry either lacked the degree of knowledge or skill or failed to exercise the degree of care possessed by or ordinarily exercised by medical doctors trained or experienced in the field of emergency medicine and acted in a negligent and/or reckless manner in the care provided to Ms. Nash as described above.

26. Dr. Gerry negligently and/or recklessly provided emergency care to Ms. Nash, which was a cause of her death.

<u>**COUNT II**</u>

Plaintiff re-alleges paragraphs 1 through 26 as if fully set forth herein, and further alleges as follows:

27. Defendant Shannon Patrick Garitty, M.D. owed a duty to plaintiff Elizabeth Nash to assess, diagnose and treat her after a major motor vehicle accident with the degree of care and/or knowledge or skill possessed by or ordinarily exercised by medical doctors trained or experienced in the field of emergency medicine.

COMPLAINT
*Emma Nash, et al. v. Ryan R. Gerry, M.D., et al.*
Case No. 3AN-16-_____ CI
Page 7 of 9

28. Defendant Dr. Garitty either lacked the degree of knowledge or skill or failed to exercise the degree of care possessed by or ordinarily exercised by medical doctors trained or experienced in the field of emergency medicine and acted in a negligent and/or reckless manner in his care provided to Ms. Nash as described above.

29. Dr. Garitty negligently and/or recklessly provided emergency care to Ms. Nash, which was a cause of her death.

## COUNT III

Plaintiff re-alleges paragraphs 1 through 29 as if fully set forth herein, and further alleges as follows:

30. Defendants healthcare providers, Kathryn A. Lewis, R.N., Kim Derr-Oberlies, R.N., and Jennifer M. Vaden, C.N.A. owed a duty to plaintiff Elizabeth Nash to assess, monitor, communicate Ms. Nash's condition to the appropriate healthcare provider, and treat Ms. Nash's condition with the degree of care and/or knowledge or skill possessed by or ordinarily exercised by nurses or healthcare providers trained or experienced in the field of emergency medicine.

31. Defendants either lacked the degree of knowledge or skill or failed to exercise the degree of care possessed by or ordinarily exercised by nurses or healthcare providers trained or experienced in the field of emergency medicine and acted in a

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Ave., Suite 200
Anchorage, Alaska 99501
Tel: (907) 277-5400 • Fax: (907) 277-9896

COMPLAINT
*Emma Nash, et al. v. Ryan R. Gerry, M.D., et al.*
Case No. 3AN-16-_____ CI
Page 8 of 9
Case 3:16-cv-00290-SLG   Document 1-1   Filed 12/20/16   Page 8 of 9

negligent and/or reckless manner in the care provided to Ms. Nash as described above.

32. Defendants negligently and/or recklessly provided emergency care to Ms. Nash, which was a cause of her death.

WHEREFORE, plaintiff prays for relief as follows:

1. For compensatory damages, in excess of $100,000.00, the exact amount to be proven at trial, including, but not limited to, compensation for the wrongful death of Elizabeth Nash; for economic and noneconomic losses to the Estate of Elizabeth Nash, including compensation for pain and suffering experienced, loss of services, and for loss of enjoyment of life;

2. For costs, attorney's fees, and pre-judgment interest; and

3. For such other and further relief as the Court deems just and proper.

DATED this 14th day of October 2016, at Anchorage, Alaska.

DILLON & FINDLEY, P.C.
Attorneys for Plaintiff

By: _____
    Margaret Simonian, ABA No. 9901001

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5ᵗʰ Ave., Suite 200
Anchorage, Alaska 99501
Tel: (907) 277-5400 • Fax: (907) 277-9896